**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|  |  |  |
|---|---|---|
| | } | |
| NRB Land Use Panel v. David Dodge | } | Docket No. 48-3-08 Vtec |
| | } | |

## Decision and Order on Motion for Judgment on the Pleadings

The Land Use Panel of the Vermont Natural Resources Board ("NRB") seeks in this action to enforce against David Dodge ("Respondent") its Administrative Order ("AO"), by which the NRB gave notice of its conclusion that Respondent had violated the terms and conditions of a previously issued Act 250 permit. Pursuant to 10 V.S.A. § 8012(a), Respondent gave timely notice of his request for a hearing at which to contest the AO, thereby conferring jurisdiction upon this Court to determine if a violation had occurred and, if so, what remedies or penalties should be imposed against Respondent. 10 V.S.A. § 8012(b). Now before the Court is NRB's motion for judgment on the pleadings, to which Respondent has filed an opposition memorandum.

David Dodge is representing himself in this matter. The NRB is represented by John H. Hasen, Esq.

## Factual Background

For the sole purpose of putting the pending motions in context, we recite the following material facts, which we understand to be undisputed, unless otherwise noted:

1. On February 20, 1990, Respondent and his business partner filed an application for an Act 250 permit to authorize the creation of a 10-lot subdivision of land along Hillside Avenue in the Town of Danville ("Town"). The District #7 Environmental Commission ("District Commission") conducted a hearing on Respondent's application on April 19, 1990.

2. On July 20, 1990, the District Commission issued its Findings of Fact and Land Use Permit #7C0797. The NRB filed a copy of the Permit and Findings with the Court, both of which are specifically referenced in the AO.

3. In its Findings, the District Commission noted the following determinations that are material to the NRB assertion of a violation now before the Court:[1]

---

[1] The following quotation includes the paragraph numbering from the Findings.

3. Although Hillside Avenue (between Hill Street and Highland Avenue) is a Class III roadway, it is at most 1 ½ lanes wide.

4. The sight distances at the intersection of the Class III roadway and Hill Street and the intersection of Highland Avenue and Route 2 are poor.

5. The project roadway will be 20' wide with 2' shoulders. The applicant estimates that at most 84 trips per day will be generated by the project.

6. The Danville Board of Selectmen has developed a plan to make Hillside Avenue one-way, so as to prevent traffic from making blind turns onto Hill Street.

7. The [District] Commission will condition the permit to require the applicant to implement the Selectmen's traffic control plan.[2]

In re David Dodge, Docket # 7C0797, Findings of Fact, at p.4 (Dist. 7 Envtl. Comm. July 20, 1990) ("Findings") (citations omitted).

4. Permit Condition #15 of Land Use Permit #7C0797 states that "applicants shall pay the Town of Danville's costs in converting Hillside Avenue to a one-way road at such time as the Town makes the conversion but no later than before the last lot is sold." (Emphasis in original.)

5. In July 2003, Respondent sold the last lot in the approved subdivision.

6. In the fall of 2007, the Town completed the conversion of Hillside Avenue to a one-way road. The Town reported total costs associated with this road conversion of $931.86. Respondent does not dispute that the Town incurred these costs in connection with this road conversion.

7. On October 3, 2007, the District Commission Coordinator made request of Respondent for reimbursement for the Town's costs of converting Hillside Avenue.

8. On December 3, 2007, the District Commission Coordinator repeated the request for reimbursement.

9. On January 31, 2008, NRB's Permit Compliance Officer made request of Respondent for reimbursement for the Town's costs of converting Hillside Avenue.

10. To date, Respondent has not reimbursed the Town for any of the expenses incurred in converting Hillside Avenue.

---

[2] We note that neither the Findings nor the Permit reflect that the Danville Selectmen made any direct representations to the District Commission; neither document reflects that the Board of Selectmen appeared or participated in the 1990 District Commission proceedings. The Town Planning Commission did enter its appearance in the 1990 proceedings, although the party participation statute regards a planning commission as a separate entity from a town selectboard. See 10 V.S.A. § 6085(c)(1)(C).

11. On March 11, 2008, NRB issued its AO, asserting that Respondent was in violation of Permit condition #15, that he remained obligated to reimburse the Town for $931.86 and should now also pay NRB a penalty of $1,800.00, due to his failure and refusal to make timely reimbursement to the Town. Respondent then filed his Request for Hearing with this Court, so that he could contest the pending AO.

### Discussion

By its pending motion, NRB requests that this Court enter judgment in its favor as a matter of law under V.R.C.P. 12(c). In ruling on the NRB motion for judgment on the pleadings, as with summary judgment motions, we must construe all facts in a light most favorable to Respondent. See, e.g., Jordan v. State Agency of Transp., 166 Vt. 509, 511 (1997).

Respondent does not contest that his Act 250 Permit contains a condition that requires him to "'pay the Town of Danville's costs in converting Hillside Avenue to a one-way road at such time as the Town makes the conversion but no later than before the last lot is sold.'" See AO at ¶ 4 (citing Permit Condition #15) (emphasis in original). We are presented here with the issue of how to interpret this permit condition, particularly since the Town road work was not completed until well after Respondent sold his last lot. For the reasons detailed below, we conclude that Respondent remained liable to reimburse the road conversion costs, even though the road work was completed years after he sold the last of his lots authorized by Permit #7C0797.

Reading both the Permit and Findings in context, it now appears that at the time that this permit condition was drafted, the District Commission and Respondent understood that the Town would complete the work necessary to convert Hillside Avenue to a one-way street well in advance of the sale of the last lot. As it turned out, it took many years for the road conversion work to be commenced and completed; the record before us indicates that the road work was not even begun for more than four years after Respondent sold the last lot in his development and over seventeen years after the District Commission relied upon the road conversion work proposal when rendering Permit #7C0797.

After the Town finally converted Hillside Avenue to one-way traffic, Respondent refused to reimburse the road conversion costs, arguing that he "believes that he is not in violation of the Permit because he was never requested to make any payment before the last lot was sold." Dodge Mem. (Apr. 24, 2008). We understand that Respondent's argument relies upon an

interpretation of the phrase "no later than <u>before</u> the last lot is sold" as a limitation on when the Town could charge Respondent for the fees associated with the road conversion work.

When called upon to interpret land use permits conditions, we are directed to "rely upon normal rules of statutory construction." <u>Agency of Natural Res. v. Weston</u>, 2003 VT 58, ¶ 16, 175 Vt. 573. In particular, although ambiguities are construed in favor of the landowner, our "principal concern" must be to implement the intent of the drafters of the permit. <u>Id</u>. In this regard, we seek to interpret Permit Condition #15 within the context of the Commission's Findings and the plain meaning of the words and grammatical structure the Commission chose to use.

Even when construing the facts in a light most favorable to Respondent, we cannot agree that the Town's delay in converting Hillside Avenue discharged Respondent's duty to pay for the costs of this conversion. The interpretation of the legal effect of a permit condition is a question of law, and we hold that this permit condition unambiguously required Respondent to pay the costs of converting Hillside Avenue: "'The applicants <u>shall</u> pay the Town of Danville's costs in converting Hillside Avenue to a one-way road . . . .'" AO at ¶ 4 (citing Permit Condition #15) (emphasis added). The provision that states "but no later than <u>before</u> the last lot is sold" only modifies the time at which Respondent should pay and does not establish a deadline for the completion of the road conversion work.

It is quite common for permit conditions to require an applicant to pay for something at a particular time and upon the occurrence of a particular event. Here, Respondent received the benefit of having his permit application granted because the District Commission determined that, with the future road conversion work, Respondent's proposed subdivision "[w]ill not cause unreasonable congestion or unsafe conditions with respect to use of the [area] highways." 10 V.S.A. § 6086(a)(5). Because of the emphasis in the District Commission's Findings upon the "poor" condition of area roadways, and the lack of any reference in the Findings or Permit to a time limitation upon when the Town should complete the road conversion work, we conclude that Respondent's obligation to reimburse the Town did not expire when he sold his last lot. Although these costs accrued at a later time than the parties originally contemplated (thereby conferring a benefit on Respondent, who was able to delay his payment for many more years than was originally anticipated), this delay does not excuse Respondent from his duty to pay.

The permit condition is clear on its face; we therefore **GRANT** NRB's motion for judgment on the pleadings, to the extent that Respondent must reimburse the Town for the $931.86 in costs it incurred for converting Hillside Avenue to a one-way street.  We decline, however, to summarily assess penalties against Respondent, as we conclude that a merits hearing is necessary so that we may determine what facts are material to the assessment of penalties. Unless the parties can reach an agreement on this last legal issue within the next 30 days, a merits hearing will be scheduled to receive evidence on the appropriate penalty (if any) to be imposed, and whether this penalty should include NRB's attorneys' fees that have accrued to date and that could continue to accrue between now and the end of these proceedings.

Done at Berlin, Vermont this 30th day of September 2008.

_____

Thomas S. Durkin, Environmental Judge

5